Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2104 | **DATE** | 4/8/2003 |
| **CASE TITLE** | Denise Newell vs. Micro Center Sales Group, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant Micro Center Sales Corp.'s Motion for Summary Judgment is GRANTED and Counts I and II of Newell's complaint are DISMISSED in their entirety. The Court also hereby relinquishes supplemental jurisdiction under 28 U.S.C. Section 1267 over Newell's state law claim in counts III and IV, thus terminating case. All pending motions are DENIED as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | APR 0 9 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 70 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| | WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 8 2003
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

DENISE NEWELL,

    Plaintiff,

v.

MICRO CENTER SALES GROUP d/b/a
MICRO CENTER, et al.,

    Defendants.

Case No. 02 C 2104

Hon. Harry D. Leinenweber

DOCKETED
APR 0 9 2003

## MEMORANDUM OPINION AND ORDER

Denise Newell has two basic complaints against Micro Center. First, she complains that she was harassed because of her race (African-American) by her former supervisor, Adam Mandel (white male), and, second, because of her complaint she was retaliated against by Micro Center when it issued a "One-Time Warning Memorandum" on November 29, 2000, and denied her a training opportunity.

### BACKGROUND

Micro Center is in the business of sales and distribution of computer hardware, software and other accessories. It maintains retail centers in the Chicagoland area. Newell has been employed by Micro Center since December 2, 1996, first as a Human Resources Assistant and, since September 1997, as a General Sales Supervisor. She continues in that position today. Mandel, initially occupied the same position as Newell, General Sales Supervisor. In February

2000, Mandel was promoted to the position of Retail Sales Manager and became Newell's direct supervisor. Prior to Mandel's promotion he and Newell got along together.

According to Newell, her problems with Mandel commenced in March 2000, when she returned from a leave of absence due to the death of her son. Mandel told her that he would be delegating some of her duties to a sales associate in her department. She told him not to do so as she was fully capable of handling all of her job duties. Mandel refused and she complained to Micro Center Management. She contends that it was after she complained that Mandel commenced his campaign of harassment.

According to Newell, Mandel belittled her, called her his slave, and excessively paged her through the intercom system. He also yelled at her, belittled her in front of her subordinates and was unfairly critical of her work. Mandel denies that he ever referred to Newell as his slave and, after Newell complained to management, Micro Center conducted an investigation but was not able to find anyone to confirm that it happened. Newell admits that she referred to herself, verbally and in writing, as Newell's slave and that she on one occasion got down on her hands and knees and asked Mandel if he wanted her to lick his shoes. On October 14, 2000, Mandel struck Newell with a stuffed animal. Newell believed that Mandel was frustrated as a result of an incident that had occurred earlier in the day. Newell charged

Mandel with criminal battery. The charge was dismissed when she failed to show up in court. Micro Center conducted an investigation of this incident and counseled Mandel. He was eventually offered the choice of relocating or resigning. He chose to resign. Newell contends that the harassment caused her stress and a miscarriage. However, she failed to supply the court with any medical support showing causation.

During the time Mandel was retail sales manager (and Newell's superior), numerous other employees, white, nonwhite, male and female, complained that Mandel talked down to them and acted in a demeaning manner. Newell suggests that two other supervisors, Gerald Minzey, and Chris Caldwell, white males occupying positions similar to hers, were treated more favorably by Mandel. However, as Newell admits, both of them complained that they were also treated in a demeaning and condescending manner by Mandel. Micro Center admits that Mandel's management style left something to be desired, and to such an extent that it removed him from his supervisory position, in part because of Newell's complaints.

Newell filed a charge of discrimination against Micro Center with the Illinois Department of Human Rights (the "IDHR"). The Department conducted fact-finding conferences and found "substantial evidence" to support the charges of harassment and retaliation. The IDHR filed a complaint with the Illinois Human Rights Commission but Newell asked that it be stayed before any

evidence could be taken because she preferred to litigate in federal court.

On November 29, 2000, Newell received a written warning complaining of her actions on the sales floor in view of customers, in which she portrayed herself as a slave on a southern plantation. This was a "One-Time" warning, meaning that the employee was given a chance to correct her behavior before disciplinary action is taken. Newell was not further disciplined for her alleged conduct. Newell claims that this warning was given to retaliate for her complaint of harassment.

She also claims that she was denied a training opportunity when another employee was sent for a work related "reset" training session in retaliation for her complaint. This "training" was simply a reorganizing of product shelving in the Micro Center retail outlets. An employee was selected to be sent to another store to participate in the reorganizing and then to return to lead the reorganizing at his home store. Micro Center says that it had valid business reasons for selecting the other employee to attend the training session. Newell, however, failed to state how her career was affected negatively by not receiving the training.

Micro Center has moved for summary judgment contending that Newell has not supplied evidence that the work environment was sufficiently severe so as to alter the conditions of employment. It also moves for summary judgment on the retaliation claim on the

ground that Newell has not been subjected to an adverse employment action.

## DISCUSSION

### The Harassment Claim

In order to survive summary judgment on a hostile work environment claim, a plaintiff must establish that the conduct alleged to be hostile was so severe or pervasive so as to create an abusive work environment in violation of Title VII. *Russell v. Board of Trustees of the University of Illinois*, 243 F.3d 336, 343 (7th Cir. 2001). In making this determination the court will look at all of the circumstances, including the nature of the conduct, the frequency, whether it was physically threatening or humiliating, and whether it interferes with an employee's work performance. *Id.* It must be both objectively offensive, *i.e.*, a reasonable person would find it hostile or abusive, and subjectively offensive to the plaintiff, herself. *Rogers v. City of Chicago*, No. 02-1211 (slip op. P. 7)(7th Cir. February 26, 2003).

Newell's complaints relate solely to the conduct of her superior, Mandel (except to the extent that Micro Center failed to do anything about it). She contends that he belittled her in front of her subordinates, unfairly criticized her work, paged her excessively and on one occasion called her his slave. She also claims that he threw a stuffed animal at her, although she

sustained no injury. (An eyewitness testified that he tossed it to her "like a football" in an unfriendly manner). Boorish as that might have been, the evidence shows that Mandel was apparently an "equal opportunity" abusive boss. Newell's three white male counterparts, Chris Caldwell, Gerald Minzey, and Joe Centano, had essentially the same complaints against Mandel as did Newell. This fact would tend to indicate that the harassment was not of a racial nature. The most that could be said is that Newell was subjected to a greater amount of paging than the other three, although they all complained about this.

The only indication of racial nature of the harassment was the single occasion (disputed but for purposes of this motion accepted as true) that Mandel called Newell his "slave." If this did occur, of course this would represent a high degree of boorishness on Mandel's part but a single occasion of racism hardly makes for an objectively hostile environment. Newell's response to this, was to refer to herself, both verbally and in writing, as Mandel's slave, and she went so far as to kneel down and pretend to kiss his feet, and refer to herself as a "field nigger." (She apparently did the latter in front of customers which led to discipline which she contends constituted retaliation). This would tend to indicate that she was not subjectively offended by the "stray" remark to the degree necessary to amount to illegal racial harassment.

Micro Center did attempt to alleviate the problems that Newell (and the others) had with Mandel. After her complaints, Mandel was transferred to a different shift. Mandel was also counseled about his management style and eventually was given the choice of accepting a job in a different locale or termination. He chose termination.

**Retaliation**

Under Title VII, unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing unlawful discrimination. *Fine v. Ryan International Airlines*, 305 F.3d 746, 751 (7th Cir. 2002); *Rogers*, at. P. 9. As is obvious from the above, the first element that a plaintiff must prove is that she suffered an adverse employment action at the hands of her employer. Newell alleges that she was issued a "One-Time Warning Memorandum" and that she was denied the training opportunity relating to the "reset" reorganization.

To be actionable retaliation, the employment action must represent a significant negative change in employment status. *Smart v. Ball State University*, 89 F.3d 437, 440 (7th Cir. 1996). One that has little or any effect on an employee's job does not suffice. Reprimands or negative performance evaluations, which are not accompanied by some tangible job consequence, do not constitute adverse employment actions. *Id.*; *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). Here the act of which Newell complains was a

reprimand, no more, no less. Consequently this is not sufficient to justify a federal lawsuit.

The second act on the part of Micro Center of which Newell complains is the failure to send her to be trained for the reset reorganization. Failure to train could be an adverse employment action if the failure was part of an effort to avoid promoting an employee. However, the record is silent as to any unfavorable consequence of the missed opportunity. Micro Center argues that this is because the reset was a one-time reorganization of store inventory. If this is true, it would not have been a training opportunity. However, even if it was, it was not sufficient in and of itself to constitute an adverse job action without any negative consequences to Newell. *Dollis v. Rubin*, 77 F.3d 777,779 (5th Cir. 1995).

### The Findings of the IDHR

Newell filed two charges with the Illinois Department of Human Rights. An IDHR investigator investigated Newell's charges and made written findings to the Department director pursuant to Illinois statutory authority (775 ILCS 5/7A-102). On one of the complaints he found a lack of substantial evidence and on the second he found "substantial evidence" of violations of both harassment and retaliation. The investigator however cautioned that "the evidence in the case [was] based primarily upon the credibility of the witnesses" and the "case was best suited to be

heard before a trier of fact so that the credibility can be determined." The investigatory phase is conducted without any opportunity to engage in discovery or cross examine witnesses. The statutory frame work contemplates the filing of a complaint before the Human Rights Commission and an adversary hearing with cross examination after discovery. In this case a complaint was in fact filed before the Commission but has been stayed at Newell's request while she litigates in federal court.

Newell appears to be arguing that the findings of violations by the investigator are admissible in this proceeding and, thus, summary judgment is foreclosed. Federal Rule of Evidence 803 (C) provides that in civil cases "factual findings resulting from an investigation made pursuant to authority granted by law" are admissible "unless the sources of information or other circumstances indicate lack of trustworthiness." As we have seen, the investigator obtained his authority in this case from Illinois law. Consequently, his findings of fact are admissible unless they lack trustworthiness. Although the investigator himself urged caution in evaluating his findings because of his inability to make credibility determinations, we do not need to make an admissibility determination. The findings of substantial evidence by the investigator are based almost exclusively upon Newell's own words which do not materially differ from what she has presented in response to the motion for summary judgment, which words the court

has already accepted as true for purposes of this motion. The investigator concluded from his investigation that there was substantial evidence of violations but the court does not have to accept what amount to his legal conclusion. Taking as true what the investigator reported, this court would still hold that such evidence is insufficient to constitute violations of Chapter VII for the reasons previously set forth in this Memorandum Opinion.

### CONCLUSION

Since Newell as failed to establish any violation of Title VII, Micro Center's Motion for Summary Judgment is granted. **IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: April 8, 2003